UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:17-cv-61867

KARA GAWTREY

    Plaintiff,

VS.

COSMETIC SURGERY CENTER OF
SOUTH FLORIDA, LLC

    Defendant.
_____/

## COMPLAINT

Plaintiff, Kara Gawtrey ("Gawtrey"), by and through her undersigned counsel, hereby sues Defendant, South Florida Center for Cosmetics Surgery, lnc., ("Cosmetic Surgery") and alleges as follows:

### Parties, Jurisdiction and Venue

1.    This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a ("Title I"), and the Pregnancy Discrimination Act ("PDA") of 1978, 42 U.S.C. § 2000e(k), for damages due to the unlawful employment practices on the basis of sex (pregnancy), Title I of the Americans with Disabilities Act of 1990 ("ADA") and correlating retaliatory behavior.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

3.    Gawtrey is a female United States resident of Palm Beach County, Florida.

1

4. Gawtrey is an "employee" within the meaning of Title VII and the ADA.

5. Cosmetic Surgery Center of South Florida, LLC, (also know as South Florida Center for Cosmetics Surgery), is a Florida corporation with its principal place of business in Broward County, Florida. At all times relevant to this claim, Cosmetic Surgery maintained an office (Cosmetic Surgery) and engaged in business in Broward County, Florida.

6. Cosmetic Surgery is an "employer" within the meaning of Title VII, the ADA and the FCRA.

7. Venue is proper in the United States District Court for the Southern District of Florida, Broward Division, pursuant to 42 U.S.C. § 2000e-5(t)(l) and (3) ("Title VII"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

8. All conditions precedent to this claim have been performed, satisfied or waived.

9. Gawtrey's EEOC Notice of Right to Sue Letter is attached as Exhibit A.

10. Gawtrey has been required to hire counsel and has agreed to pay them costs and attorneys' fees for their services in this matter.

## Facts Giving Rise to Relief
### Gawtrey's High-Risk Pregnancy

11. Cosmetic Surgery is a cosmetic surgeon's office and medical spa.

12. On December 8, 2014, Ms. Gawtrey was hired as a Medspa Manager at Cosmetic Surgery.

13. In early 2015 Ms. Gawtrey learned she was pregnant and informed her employer.

## Gawtrey's Requests for Accommodation

14.     Gawtrey informed Cosmetic Surgery that she needed to have several doctor appointments during her second trimester to undergo additional ultrasounds and other testing.

15.     Ms. Gawtrey provided advance notice of her appointments to General Manager Vankirk.

16.     Ms. Gawtrey offered and made every effort to set her appointments first thing in the morning, or last in the afternoon so as to minimize her absence from work.

17.     Ms. Gawtrey offered to work to make up for her missed time.

18.     Ms. Gawtrey was disciplined, demoted, and eventually terminated for having to go to the doctor for the proper monitoring of her unborn baby.

19.     Ms. Gawtrey's obstetrician determined that Gawtrey's pregnancy was high-risk.

20.     The doctor ordered that Gawtrey's pregnancy be closely monitored.

21.     Gawtrey informed Direct Supervisor of her high-risk pregnancy and her need to attend frequent doctor appointments.

22.     On or around April 15, 2015, in retaliation and to punish Ms. Gawtrey - who had been beating all of her sales quotas - President Tess Jahnke changed her wages from salary to hourly.

23.     Ms. Gawtrey was disciplined for receiving medical attention for her high-risk pregnancy.

24.     Around the same time period, General Manager Tam Vankirk began to harass Ms. Gawtrey about her appointment times, and assign Gawtrey additional tasks to overwhelm her and set her up for failure.

25.     On Saturday, May 9, 2015, General Manager Vankirk scolded Ms. Gawtrey for her frequent absences, and cited Gawtrey's frequent second trimester appointments.

26.     Feeling threatened and demeaned, Gawtrey went home extremely upset and saddened.

27.     On Sunday, May 10, 2015,  sent owner John Nord and President Tess Jahnke a formal complaint regarding my being harassed for being pregnant, and the hostile work environment she was suffering from due to General Manager Vankirk's escalating attacks which specifically cited her doctor appointments.

28.     Two days later, on Tuesday, May 12, 2015, Ms. Gawtrey was fired.

**Cosmetic Surgery's Termination of Gawtrey's Employment**

29.     Cosmetic Surgery treated Ms. Gawtrey less favorably than similarly-situated employees outside of her protected classes.

30.     Indeed, Cosmetic Surgery violated its own attendance, scheduling and human resources policies in terminating Ms. Gawtrey's employment due to her need to see a doctor to monitor her baby's development in the womb.

31.     Cosmetic Surgery discriminated against Ms. Gawtrey on the basis of sex/ pregnancy and disability/handicap, and being perceived as having a disability/handicap. Ms. Gawtrey would not have been terminated but for these unlawful reasons.

32. Ms. Gawtrey was retaliated against for being pregnant by having additional tasks given to her, and management repeatedly complained about her not being in the office due to her pregnancy and need to see a doctor.

33. Ultimately, Ms. Gawtrey's written complaint about the discriminatory behavior of General Manager Vankirk resulted in ownership retaliating by terminating her employment.

## COUNT I

### Title VII — Sex and Pregnancy Discrimination

34. Gawtrey re-alleges paragraphs 1 through 33 as if fully set forth herein.

35. Cosmetic Surgery's managers' blatant remarks, whose intent could be nothing other than to discriminate against Gawtrey on the basis of her sex and pregnancy, constitute direct evidence of discrimination.

36. Alternatively, Cosmetic Surgery treated Gawtrey less favorably than similarly-situated employees outside of her protected classes (female/pregnant), in violation of Title VII.

37. Gawtrey's sex and pregnancy was a motivating factor in Cosmetic Surgery's decision to demote her from salary to hourly status.

38. Gawtrey's sex and pregnancy was a motivating factor in Cosmetic Surgery's decision to terminate her employment.

39. Gawtrey would not have been terminated but for her sex and condition of pregnancy.

40. Cosmetic Surgery acted with a reckless disregard for Gawtrey's rights under federal law.

41. As a direct and proximate consequence of Cosmetic Surgery's unlawful and discriminatory employment practices, Gawtrey suffered and continues to suffer loss of earnings and benefits, emotional pain, suffering, embarrassment, humiliation, loss of enjoyment of life and inconvenience.

WHEREFORE, Gawtrey demands a jury trial on all issues and respectfully asks the Court to enter a money judgment against Cosmetic Surgery representing compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress and punitive damages, together with pre-judgment interest, costs, and reasonable attorneys' fees.

## COUNT II

### ADA — Disability/Perceived Disability Discrimination and Failure to Accommodate

42. Gawtrey re-alleges paragraphs 1 through 33 as if fully set forth herein.

43. Cosmetic Surgery's managers' blatant remarks, whose intent could be nothing other than to discriminate against Gawtrey on the basis of her disability or perceived disability, constitute direct evidence of discrimination.

44. Alternatively, Gawtrey's medical conditions and need to monitor for potential complications resulting from her pregnancy constitute a disability under the ADA.

45. At all times material to this Complaint, Gawtrey suffered medical conditions that substantially limited one or more major life activities and Cosmetic Surgery regarded her as having such disability.

46. Cosmetic Surgery's decision to terminate Gawtrey was based on her disability.

47.  Cosmetic Surgery would not have terminated Gawtrey's employment but for this unlawful motivation.

48.  Moreover, Cosmetic Surgery unlawfully failed to accommodate Gawtrey although doing so would not have posed an undue burden on the company.

49.  Approving Gawtrey to modify her schedule to allow her to go to doctor appointments would have been an appropriate accommodation. Gawtrey expected to not fall behind in her work if and she would still be able to ensure her baby safely made it through the second semester of her high-risk pregnancy.

50.  Cosmetic Surgery discriminated against Gawtrey with a reckless disregard for Gawtrey's rights and, as a result, Gawtrey has suffered damages.

WHEREFORE, Gawtrey demands a jury trial on all issues and respectfully asks the Court to enter a money judgment against Cosmetic Surgery representing compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress and punitive damages, together with pre—judgment interest, costs, and reasonable attorneys' fees.

## COUNT III

## RETALIATORY TERMINATION

**Gawtrey was terminated in retaliation for sending a written complaint to ownership.**

51.  Gawtrey re-alleges paragraphs 1 through 33 as if fully set forth herein.

52.  Gawtrey engaged in a protected activity, when she sent her written complaint about discrimination and harassment to Tess Jahnke and John Nord.

53.  Two days after Ms. Gawtrey complained to ownership, she was fired, disciplined, or otherwise punished by your employer.

54. There is a direct causal relationship between Ms. Gawtrey being an high risk pregnancy and her termination.

WHEREFORE, Gawtrey demands a jury trial on all issues and respectfully asks the Court to enter a money judgment against Cosmetic Surgery representing compensatory damages, lost wages, past and future wages, lost benefits, mental anguish, emotional distress and punitive damages, together with pre-judgment interest, costs, and reasonable attorneys' fees.

DATED this 25th day of September, 2017.

    Respectfully submitted,

    Michael A. Hoffman, Esq., P.A.
    **Counsel for Plaintiff**
    4000 Hollywood Blvd, #725-S
    Hollywood, FL  33021
    Tel: (954)665-5290
    Fax: (954)944-1932
    Michael@MAHlawyer.com

    /s/ Michael A. Hoffman, Esq.
    FLA BAR # 89549